TAMASOAALI`I JOSEPH TUFA, LETALU MAUI, and
VA`ANATIU TO`AFALA IAFETA, Plaintiffs,

v.

LOLO MOLIGA, SENATE OF AMERICAN SAMOA,
LE`ULA TUESE TALI, PAOPAO FARESA, MA`O TIMA,
and SEGA APISA ATOE, Defendants.

High Court of American Samoa
Trial Division

CA No. 02-05

May 26, 2005

Before RICHMOND, Associate Justice; MAMEA, Associate Judge; and TAPOPO, Associate Judge.

Counsel: For Plaintiffs Tamasoaali`i Joesph Tufa, Letalu Maui, and Va`anatiu To`afala Iafete, Jennifer L. Joneson and Henry W. Kappel.
For Defendants Lolo Moliga and Senate of American Samoa, Roy J.D. Hall Jr. and Jeffrey Waller
For Defendants Ma`o Tima and Sega Apisa Atoe, Fiti A. Sunia

## OPINION AND ORDER

Plaintiffs Tamasoaali`i Joseph Tufa ("Tamasoaali`i"), Letalu Maui ("Maui"), and Va`anatiu To`afala Iafete ("Va`anatiu") question by this action whether Defendants Ma`o Tima ("Ma`o") and Sega Atoe ("Sega") were elected as the present two senators representing Senate District No. 1, in accordance with Samoan custom as required by Article II, Section 4 of the Revised Constitution of American Samoa. We hold that Ma`o and Sega were properly elected.

## **Background**

### I. Applicable Constitutional and Statutory Provisions

The 28th Legislature of American Samoa concluded its final session in 2004. The election of the senators to represent Senate District No. 1 during the 29th Legislature of American Samoa is at issue in this action. Senators must be "elected in accordance with Samoan custom by the county councils of the counties they are to represent." REV. CONST. AM. SAMOA art. II § 4.

 Senate District No. 1 is comprised of three counties in the Manu`a Islands District, Fitiuta, Faleasao, and Ta`u, and is represented by two senators. *Id.*; A.S.C.A. § 2.0202. The two senators were to be elected by the three counties before the beginning of their four-year term of office at noon on January 5, 2005. *See* REV. CONST. AM. SAMOA art. II, § 6. A county chief heads each county and presides at meetings of the county council. A.S.C.A. § 5.0201. County chiefs must also certify the county councils' senatorial election decisions. REV. CONST. AM. SAMOA art. II, § 4. The county chiefs of the three counties when the present controversy arose were Defendants Paopao Faresa ("Paopao") for Fitiuta County, Le`ula Tali ("Le`ula") for Faleasao County, and Maui for Ta`u County.

## II. The Factional Split in the Ta`u County Council

The factional split in the Ta`u county council is a cogent element of this election controversy. In that connection, the *Fa`atui* [Paramount Chiefs of Manu`a] and *To`oto`o* [High Talking Chiefs of Manu`a] members of the council were allegedly ousted from the group of members known as the *Usoali`i* [other ranking Chiefs of the council]. The *Usoali'i* faction, made up in part by Plaintiffs, continues to assert their authority as the county council while the *Fa`atui* and *To`oto`o* members dispute such authority. The purported present ouster is recent, but is not the first occurrence of this nature during the history of this lengthy internal dispute. The Fitiuta and Faleasao county councils do not recognize the present "ouster."

The internal dispute within the Ta`u county council is the root cause of the present controversy. On December 11, 2004, members of the *Usoali`i* faction of the Ta`u county council met to discuss the senatorial election. The meeting was called by Maui as the Ta`u County Chief. At the conclusion of the meeting, it was agreed that Plaintiff Tamasoaali`i Joseph Tufa ("Tamasoaali`i") would be Ta`u County's selection for one of the two open senatorial seats. None of the *Fa`atui* and *To`oto`o* faction members were present at the meeting, nor were any relevant members of the Fitiuta and Faleasao county councils. Those present apparently understood that their decision would be announced at an unrelated and upcoming December 18, 2005 meeting that had been previously scheduled by Ta`u chiefs to select the new Manu`a Islands District Governor. At least some *Usoali`i* faction members believe that the election of the Ta`u county council's choice is a mere formality when the three county councils jointly meet for senatorial elections.

Contemporaneously with the *Usoali`i* faction's December 11 meeting, the *Fa`atui* and *To`oto`o* faction selected its nominees for the Senate District No. 1 senatorial positions. Likewise, the Fitiuta and Faleasao

county councils met separately to select their nominees. These selections were made in anticipation of a joint meeting of the three county councils in December 2004 to elect the new senators. During the immediate period before the anticipated election meeting, the *Fa`atui* and *To`oto`o* of Ta`u county and members of the Fitiuta and Faleasao councils organized the meeting to be held on December 17, 2004, in Fitiuta. They settled on the place and December 17 date, no later than December 15, 2004, and perhaps several days sooner.

Paopao notified Maui of the plan to hold the joint three county election meeting on December 17 in Fitiuta. Though Maui admits to having conversations with Paopao shortly before December 17, he professes that he does not recall the substance of those discussions. However, Maui certainly knew no later than December 15 from one source or another, and probably earlier, perhaps even as early as December 11, that the organizers of the election meeting planned the joint three county council meeting to be held on December 17 in Fitiuta.

Additionally, most, if not all, qualified electors among the members of the three county councils were expecting a December 2004 joint election meeting and were already gathered on Ta`u island for that purpose. Word of mouth travels fast in American Samoa. These qualified electors certainly knew of the December 17 election meeting soon after the final date was determined. Any qualified electors still on Tutuila island were most likely also aware as of December 15 or 16 of the scheduled December 17 election meeting.

However, the organizers of the election meeting waited until December 17 to announce the time of the meeting. Paopao, Le`ula, and Maui, who as county chiefs were responsible for calling the joint meeting of the three county councils, orally issued formal notice of the time and place of December 17 meeting between noon and 1:00 p.m. on December 17. The joint three county election meeting was noticed to begin at 4:00 p.m. on December 17.

The joint election meeting convened around 4:00 p.m. on December 17 and lasted between one and two hours. Since the meeting was held in Fitiuta, La`apui Lefano Falealili ("La`apui"), a Fitiuta *to`oto`o*, presided. Attendees included High Chiefs and High Talking Chiefs from the Fitiuta and Faleasao county councils, as well as members of *Fa`atui* and *To`oto`o* faction and the *Usoali`i* faction of the Ta`u county council. Many attendees, including Tamasoaali`i and Maui, spoke their views on the election before Ma`o and Sega were elected to take Senate District No. 1's two senatorial seats.

Paopao and Le`ula as the Fitiuta and Faleasao county chiefs certified Ma`o's and Sega's election as the newly elected Senate District No. 1 senators. Maui did not sign the certification because he disputed the validity of their election.

On January 14, 2005, Tamasoaali`i, Maui and Va`anatiu To`afala Iafeta ("Va`anatiu") applied to this Court for preliminary and permanent injunctions. The application asked the Court to: (1) prohibit Defendants Lolo Moliga ("Lolo"), the current President of the Senate, and the Senate of American Samoa ("the Senate") from recognizing Ma`o and Sega as duly elected members of the Senate; (2) enjoin Ma`o and Sega from acting as senators; and (3) compel Paopao and Le`ula into calling a another meeting of the three county councils to conduct a new senate election for Senate District No. 1.

On January 28, 2005, the Senate, separately, and Lolo, Ma`o and Sega, jointly, filed motions to dismiss for failure to state a claim and lack of subject matter jurisdiction. They also jointly filed an answer to the complaint and opposition to the injunctive relief sought. However, on February 1, 2005, Ma`o and Sega, by their current counsel, jointly filed a separate answer to the complaint. The Court took up the dismissal motions and preliminary injunction application on February 1, 2005, and invoked T.C.R.C.P. 65(a)(2) to advance and consolidate the trial on the merits with the application hearing. We received extensive testimonial and documentary evidence on February 1, 2, 7, and 8. Pursuant to T.C.R.C.P. 41(b), when Plaintiffs completed their presentation of evidence, Lolo and the Senate, joined by Ma`o and Sega, moved for dismissal on the ground that Plaintiffs had no right to relief on the facts shown and applicable law, but we declined to render any judgment until the close of all the evidence. After evidence presentation was closed, the parties submitted written closing arguments. Plaintiffs also filed written oppositions to the pending dismissal motions.

## Analysis

### I. Pre-trial Dismissal Motions

■ The principal upshot of the pre-trial dismissal motions relies on the jurisdictional political question doctrine. Succinctly, the doctrine forbids judicial interference in purely political matters before a legislature. *See e.g., Colegrove v. Green*, 328 U.S. 549, 552 (1946). Lolo and the Senate argue that the decision to recognize and seat Ma`o and Sega as the certified elected Senate District No. 1 senators was an issue solely before the Senate, and this Court has no jurisdiction over the political question raised by the complaint. They further point out that neither Lolo nor the

Senate had any involvement in the Senate District No. 1 election and therefore committed no wrong under the complaint allegations.

■■■ Lolo's and the Senate's arguments simply and directly overlook the complaint allegations that challenge whether Ma`o and Sega were elected in accordance with Samoan custom. This is not a political question. It is a constitutional issue well brought before this Court for decision. *Meredith v. Mola*, 4 A.S.R. 773, 780 (Trial Div. 1973) ("The issues of what need be done for the selection of a senator to confirm to Art. II, § 4, and whether those requirements were met in the matter at bar are matters of constitutional interpretation. Such a determination falls within the traditional role accorded courts to interpret the law, and does not encroach on the Senate's power to judge specific qualifications or determine plurality of vote."). *See also Mauga v. Lutu*, 10 A.S.R.2d 115, 117-19 (Trial Div. 1989) (court found that political question doctrine should not prevent it from deciding whether constitutional requirements of election had been met). In the present case, Plaintiffs are not arguing that Ma`o and Sega are not qualified to be senators under Article II, Section 3[1] of the Revised Constitution. Nor are they contending that those nominees did not receive a favorable consensus of their election during the election meeting. Rather, they are arguing that the election process did not conform to Samoan custom, as is required under Article II, Section 4 of the Revised Constitution. Under *Meredith*, we hold that this Court has the jurisdictional authority to interpret Article II, Section 4 as it applies to the case at hand and determine whether the mandates of that section have been met.

■ With respect to Defendants' argument that this Court lacks jurisdiction over Lolo, Ma`o and Sega, individually as senators, we conclude that it too lacks merit. Defendants' argue that the current action is more properly brought exclusively against the Senate, rather than any individual senator, because no statutory or Constitutional provision authorizes a suit against the senators themselves. We disagree. First, we find that Plaintiffs' can rightfully name Ma`o and Sega, individually, as defendants because the allegedly wrongful acts took place at the December 17 election meeting before they were sworn in as senators. Therefore, the suit is directed at them, not as senators, but as individuals acting in self-interest during the election meeting.

■ Secondly, with respect to Lolo, we find that he, too, is properly named as an individual defendant. *See Diaz v. Edgar*, 831 F. Supp. 621,

---

[1] Article II, Section 3 provides, generally, that each prospective senator be at least 30 years of age, have lived in American Samoa for at least 5 years and be a registered *matai*.

623 (N.D. Ill. 1993) (stating that because a suit against a government official for acts committed within his official capacity is not a suit against the state, a court may award an injunction that governs the official's future conduct). Currently, Lolo is President of the Senate and he has, allegedly, recognized Ma`o and Sega as senators and allowed them to participate in senate activities. Furthermore, as President of the Senate Lolo would, presumably, be instrumental in preventing the recognition of the Ma`o and Sega as senators were Plaintiffs to prevail in their effort to gain a preliminary injunction. Thus, because the Plaintiffs allege that Lolo, in his official capacity, aided his co-defendants in propagating the alleged wrong, and because he is in a special position to address the correction of that alleged wrong, we hold that he is properly named as an individual defendant in the current suite. Moreover, Lolo and the Senate recognized Ma`o's and Sega's election and allowed them to be seated as senators.

Clearly, if Plaintiffs win this case, the injunctive remedies they seek would be appropriate, to ensure correction of the gambit of the alleged wrongs, against Lolo and the Senate to prevent their continuing recognition of Ma`o and Sega as sitting senators, as well as against Ma`o and Sega to implement their lost entitlement to their existing senatorial seats, and to require Paopao and Le`ula as county chiefs to join Maui in overseeing another election.

The pending pre-trial dismissal motions are properly denied.

## II. Constitutional Election in Accordance with Samoan Custom

Plaintiffs assert that because insufficient notice was given of the December 17, 2004 joint three county election meeting, all qualified electors were not afforded opportunity to participate in the meeting. They maintain that because the notice deficiency resulted in the absence of members of the three councils, especially Ta`u county council members, full sharing of diverse positions on the senatorial candidates and a genuine consensus on the persons elected did not occur at the December 17 meeting. In other words, the election was not conducted in accordance with Samoan custom, as required by Article II, Section 4 of the Revised Constitution of American Samoa.

Defendants collectively counter, in substance, that the notice was sufficient and the meeting was properly conducted in accordance with Samoan custom. They point out that not every member of the three county councils is necessarily a qualified elector entitled to notice and that Plaintiffs cannot prove that the presence of any absent chief would have altered the outcome of the election.

143

We agree with Defendants. The respective arguments address the dispositional issues. However, as a prelude to our dispositional discussion, we make several observations.

■ First, the Court cannot identify any universal Samoan custom applicable to every senatorial district or election; prevailing Samoan custom is not necessarily the same in each election district or for each election. *Eseroma v. Faresa*, 31 A.S.R.2d 169, 173 (Trial Div. 1997) and Order Denying Motion for Reconsideration, 1 A.S.R.3d 78, 79-80 (Trial. Div. 1997); *see also Meredith v. Mola*, 4 A.S.R. 773, 780-81 (Trial Div. 1973).

■ Next, during the trial, Plaintiffs harbored two incorrect positions. This court has addressed these positions in earlier litigation, which, we need once again to clearly dispel. Plaintiffs seem to think that once the members of the *Usoali`i* faction in the Ta`u county council "ousted" members of the *Fa`atui* and *To`oto`o* faction from the council, that the allegedly "ousted" chiefs automatically lost any and all authority to represent the council at joint meetings of three county councils comprising Senate District No. 1. This simply incorrect assertion directly reflects the continuing and tragic factional split within the Ta`u county council. When the three county councils jointly meet, the attendees determine, as a matter of Samoan custom applicable to the meeting, who among the persons present may speak and, if the agenda includes the election of senators to represent the three counties, who are qualified electors. *Eseroma*, 1 A.S.R.3d 78, 79-80.

■ Plaintiffs also maintain that as a matter of Samoan custom, and by agreement of the three county councils, Ta`u County always decides on one of the two Senate District No. 1 senators, on this occasion Tamasoaali`i, and Fitiuta and Faleaso counties jointly decide on the second senator. Defendants, supported by a Ta`u *to`oto`o*, vigorously and correctly dispute this claim. The two Senate District No. 1 senators must be elected by the three counties collectively, and even if the three counties established and maintained a practice enabling the Ta`u county council to elect *its own* senator, the practice would be unconstitutional. *Eseroma*, 31 A.S.R.2d 169, 172. Because the Ta`u county council cannot alone elect a senator, the suggestion that Tamasoaali`i was elected at the December 11 meeting of the *Usoali`i* faction of the Ta`u county council is erroneous. *See Mauga v. Lutu*, 10 A.S.R.2d 115, 120 (Trial Div. 1989) (holding that the selection of a senator must include "all relevant county council members"); *Tuiasosopo v. Taifane, supra*, at 135 (Trial Div. 2005) (holding that a "sub-part" of the county council cannot alone elect a senator). The three county councils must act together in electing the two Senate District No. 1 senators. Since the Fitiuta and Faleasao county councils did not participate in the December 11 meeting,

144

members of the Ta`u county council at that meeting could only nominate Tamasoaali`i as a candidate for election at a later joint three county council meeting.

We now turn to discussion of the dispositional issues. In *Logoleo v. Fa`amausili,* 9 A.S.R.3d 67, 71-72 (Trial Div. 2004), this court recently held that:

> [I]n order to comply with Samoan custom, a senatorial election (1) must provide opportunity, which would inherently include adequate notice to all eligible electors, to enable full participation by all, and not some, of the county councils constitutionally responsible for electing a Senator to represent their counties (three counties in the case of Senate District No. 1) and (2) the process must permit an extensive sharing of ideas on potential candidates, and a forging of a collective will as to who shall serve in the Senate.

A. Notice of the December 17 Meeting

 The first prong of the test provides that the chiefs who are charged with the responsibility of calling an election meeting must provide each eligible elector the opportunity to attend the meeting. Principally, this means that they must afford adequate notice to those electors. Whether or not in a given election those electors were provided with "adequate notice" is something that must be examined objectively, while considering relevant circumstances surrounding the intended meeting and election. The only real issue in this case is whether or not all of the chiefs who were entitled to attend the December 17 meeting, and were qualified to elect Ma`o and Sega, were given adequate notice of the meeting.

 The fact that all eligible electors attend an election meeting does not necessarily mean that each was given adequate notice. Likewise, the fact that certain electors did not attend an election meeting does not necessarily mean that they received inadequate notice.

 And this is not to say that more traditional methods of notice are unacceptable. Oral notice, for instance, can be a perfectly adequate method and is probably the norm for calling senatorial elections in American Samoa. Also, this does not mean that every election necessitates a lengthy notice period. The point is simply that every qualified elector must receive "adequate" notice under the circumstances of the particular meeting.

145

That brings us to the case at hand. The date and place of the election meeting on December 17, 2004, was settled no later than December 15, and probably several days earlier. Although formal notice of the meeting remained unannounced, all qualified electors were well aware of the need to have the joint three county council election meeting in December and most, if not all, were already present on Ta`u island. Indeed, Plaintiffs did not clearly identify any qualified electors, on or off Ta`u island, who did not attend the December 17 meeting.

Even if the qualified electors were not involved in the meeting planning process, they must have known about the scheduling of the meeting on December 17 in Fitiuta almost as soon as that decision was made. Word of the December 17 meeting would also have quickly spread to qualified electors, if any, still on Tutuila island in sufficient time to arrange for a flight to Ta`u island if they desired to participate in the election. Even though the formal announcement of the meeting, including the starting time, was not sent out, and then only orally, until approximately three to four hours before the meeting convened on December 17, this relatively scant notice does not alter the fact the eligible participants had adequate opportunity to be present and join in the election debate at the meeting.

We therefore conclude that the notice of the December 17, 2004 election meeting was promulgated in a manner that was legally sufficient to give all eligible electors among the members of the three county councils adequate opportunity to participate in the election.

B. Conduct of the December 17 Meeting

The second prong of the *Logoleo* test has been met. The evidence indicated that there was an extensive sharing of ideas during the December 17 meeting. The witnesses on both sides testified that many participating attendees at the meeting, including Tamasoaali`i and Maui, were allowed to voice their opinions and that all sides were heard before La`apui announced Ma`o's and Sega's election by the consensus of the attendees. As the presiding Fitiuta *To`oto`o*, Fa`apui was responsible for listening to the proceedings and announcing the group's decision when he was satisfied that a consensus decision had been reached. *See Eseroma v Faresa*, 31 A.S.R.2d 169, 171 (Trial Div. 1997) and Order Denying Motion for Reconsideration at 1 A.S.R.3d 78, 81 (Trial Div. 1997).

C. Conclusion on the Election Process

We therefore conclude that Ma`o and Sega were properly elected on December 17, 2004, as the senators representing Senate District No. 1, in compliance with the constitutional requirement that senatorial elections

be conducted in accordance with Samoan custom. The dismissal motion during the trial by Lolo and the Senate, expressly joined by Ma`o and Sega, is properly granted.

## III. Election Certification by County Chiefs

Plaintiffs also contend that the election must be set aside because Article II, Section 4 of the Revised Constitution and A.S.C.A. § 2.0203 require all three county chief to certify the election results. Maui refused to sign the certification on the ground that the election of Ma`o and Sega as the two Senate District No. 1 senators was not conducted in compliance with Samoan custom. Only Paopao and Le`ula signed the certification. We disagree with this contention.

 The constitutional and statutory provisions are logically written in plural form as they relate to all Senate districts, whether consisting of a single or multiple county councils, in the Territory. If the county chiefs had any discretion to disapprove senatorial election results, the door would be open to arbitrary veto power by one chief, and effectively negate the legitimate decisions of the county council or councils. *See Faliu v. Fofo*, CA No. 2504-72 (Trial Div. 1972). The certification process merely announces the result of a particular senatorial election. The process does not involve any discretion to approve or disapprove the election but only involves the ministerial duty of informing the Senate, without any critical input, of the election result. *Meredith v. Mola*, 4 A.S.R. at 779; *see also Faivae v. Mola*, 4 A.S.R. 834, 835 (Trial Div. 1975). There is also precedent in Senate District No. 1. *See Eseroma*, 31 A.S.R.2d 169, 171 (one of the three Senate District No. 1 county chiefs certified the senatorial election result when another county chief left the three county council election meeting and the third county chief did not attend the meeting).

 Paopao's and Le`ula's certification was legally sufficient to apprise the Senate of the election of Ma`o and Sega.

## Order

Ma`o and Sega are declared to be the properly elected present senators representing Senate District No. 1. The complaint is dismissed as to all Defendants. It is so ordered.